# Chappell v. Doe *ex dem.* Williamson *et al.*

### *Ejectment.*

1. *Private legislative act, authorizing sale of real estate belonging to infants and married women.* — A private act of the legislature, authorizing a sale of real estate pursuant to an agreement between the tenant for life and remainder-men under a will, passed at the instance of the parties themselves, is valid, notwithstanding the minority and coverture of some of the parties.

2. *Rebel legislative acts.* — A private act of the Legislature of this State, passed in 1863, under which a sale of real estate was made during the same year, cannot be held void on the ground that the State was then in revolt against the federal government. (PETERS, J., dissenting.)

3. *Grant of administration de bonis non.* — A grant of letters of administration *de bonis non* is, in a collateral proceeding, *primâ facie* evidence that there was a vacancy in the administration ; and the mere proof of a final settlement by the preceding administrator, in which he was not formally discharged, is not sufficient to show the invalidity of the appointment.

4. *Confederate currency as consideration of deed.* — When a deed recites a cash consideration, it is not permissible, in a court of law, to show that the consideration was in fact confederate currency.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN ELLIOTT.

None of the papers in this case, except the opinion of the court, have come to the hands of the reporter.

GRAHAM & ARRINGTON, STONE & CLOPTON, and WATTS & TROY, for appellants.

ELMORE & GUNTER, *contra.*

B. F. SAFFOLD, J. — By the will of Catherine Baker the appellees were entitled to the remainder of a certain parcel of land, after the termination of the life estate of Mary Eliza Peacock. Although two of them were minors, and another was a married woman, they united with the said Mary Eliza

Peacock in an application to the legislature for authority and permission to sell the land, alleging that a sale would be beneficial and necessary for all parties concerned. It was agreed between them that the life estate should be surrendered, and the tenant for life should share equally with the remaindermen in the division of the proceeds of the sale. In compliance with their petition, an act of the legislature was obtained, and the sale was effected. W. C. Bibb became the purchaser of the lot in controversy, and afterwards, he becoming bankrupt, his assignee in bankruptcy sold it to the appellant. A formal conveyance was duly executed on each of these sales. The appeal is taken from a judgment against the appellant, in a suit of ejectment instituted by the appellees. The errors assigned involve the validity of the act of the legislature, and also the conformity of the sale to its indispensable requirements.

1. The power of the legislature to provide for the sale of any interest in property belonging to minors *in esse* is based on such high and repeatedly affirmed authority of judicial decision and legislative action, that it may now be considered indubitable. Whatever limitation should be applied to this proposition is certainly not applicable to a particular law, which is not inconsistent with the general law, although a different mode of effecting the same object is provided. It is not correct that a minor cannot assent to the passage of a law authorizing the sale of his real estate, or that he would have a right to affirm or disaffirm the sale when he became of age. The legislature may authorize a guardian to convey the lands of an infant, or may give the capacity to the infant himself to convey them. It can also render a married woman *sui juris*. These principles are fully maintained in the cases of *Holman* v. *Bank of Norfolk*, 12 Ala. 369–414; and *Watkins* v. *Holman*, 16 Peters (U. S.), 25–62, 63.

Mrs. Peacock and her children agreed together that she would surrender her life estate in property devised " to her sole and separate use, free from the dominion, debts, and liabilities of her present and any future husband, during her natural life, and at her death to the issue of her body then living, and their heirs forever ; " that the property should be sold, and the proceeds equally divided between them all. By this arrangement, the children would enjoy presently their shares, and the mother would receive absolutely a part of what she had the right to use entirely during her life. They then jointly applied to the legislature for the requisite authority to execute this agreement, presenting such a bill as they deemed adequate for their protection and relief. The bill was passed, and, in accordance with their wishes, the sale was made. What more

was done, in substance, by this legislation, than to remove the disabilities of marriage and nonage in a particular instance? Have the parties who requested it a right to object? We think not.

2. The invalidity of the act cannot be maintained on the ground that it was passed by the legislature at a time when the State was in revolt against the federal government. The application was made, the act passed, and the sale completed during the same period. Our decisions have sustained the legislative and judicial action under such circumstances. *Griffin* v. *Ryland*, 45 Ala. 688.

3. The next branch of this case is the conformity of the sale to the requirements of the act. It was directed to be made by the administrator with the will annexed of Catherine Baker, but not until he had filed his assent thereto in the Probate Court of Montgomery County, where the land was situated. Brame was appointed administrator, for the purpose of making the sale according to the conditions; and as such he filed his assent. It is claimed for the plaintiffs, that there was at the time of his appointment an administrator who had never been discharged, and therefore the appointment of Brame was void. Jos. D. Hopper had been the administrator, and had made a final settlement of the estate of Catherine Baker, in which a decree had been rendered against him, in favor of Mary Eliza Peacock as the sole distributee. Prior to this, he, as such administrator, had obtained a decree for about the same amount against her, as the administratrix of her husband, who was the predecessor of Hopper in his administration. It does not appear how these decrees were settled, but Hopper was not formally discharged. This administration was committed to him in 1854, by virtue of his office of general administrator of the county. His final settlement was made in 1856. Brame was appointed in 1863.

A final settlement may or may not operate, *ipso facto*, as a discharge of the administrator. *Sankey* v. *Sankey* (18 Ala. 713), and *Simmons* v. *Pierce* (Ib. 405), are to the effect that it does not, if assets subseqently come to his hands. But he cannot, after such a settlement, be any more held accountable, without some voluntary act on his part. *Watt* v. *Watt*, 37 Ala. 543; *Modawell* v. *Holmes*, 40 Ala. 391. What need is there of a formal discharge? Is not the expression of facts as conclusive as any declaration of language? Those interested against him are powerless to bring him to account. But if he should receive assets afterwards, neither he nor his sureties should be allowed to plead the settlement. The appointment of an administrator *de bonis non* is, of itself, *primâ facie* evidence that there was a vacancy in the administration, and will

be held conclusive, until it is clearly and explicitly disproved. *Gray's Administrator* v. *Cruise*, 36 Ala. 559. This is especially the case in a collateral proceeding. *Cogburn* v. *McQueen*, 46 Ala. 551. Hopper was administrator only by virtue of his office of general administrator, which he may have vacated. The appointment of Brame is not shown to have been invalid.

4. As this is an action at law, and the deed to Bibb shows on its face a cash consideration, the nature of the consideration is not inquirable into. Whatever advantage the appellees may be entitled to, if any, on account of payment in confederate currency, is cognizable only in a court of equity. *Williamson* v. *Berry*, 8 Howard U. S. R. 495, 563–4.

There was no error in admitting the transcript showing the administration of Hopper. But there was in excluding that of Brame's appointment and administration. The judgment is reversed, and the cause remanded.

PETERS, J. — I dissent from so much of my Brother SAFFOLD's argument as gives validity to the acts of the legislature of the rebel government of this State during the late war.